## MOSS v. DOWMAN.

(Circuit Court of Appeals, Eighth Circuit. June 27, 1898.)

### No. 1,041.

1. PUBLIC LANDS—HOMESTEADS—RELINQUISHMENT—BONA FIDE SETTLERS.

When, on the relinquishment of a homestead entry, the land is, and for some time past has been, in the possession of another, who is a bona fide settler, his rights as such immediately attach to the exclusion of a third person, who procures the relinquishment to be made, and who simultaneously with the relinquishment tenders an application for entry of the lands, and immediately enters thereon and makes improvements.

2. SAME—RULINGS OF LAND DEPARTMENT—EQUITY JURISDICTION.

It is only when it is made plain that the officers of the land department have, by a mistake of law, deprived a party of land to which he is rightfully entitled, that a court of equity is justified in setting aside the action of the department.

Appeal from the Circuit Court of the United States for the District of Minnesota.

The bill in this case was filed in the circuit court for the district of Minnesota, for the purpose of determining the ownership of 160 acres of land situated in that state, as between the complainant and defendant, it appearing that the legal title of the land is vested in the defendant, Richard Dowman, under a patent of the United States duly issued to him under date of March

17, 1897. A demurrer to the bill was filed, and, after argument, was sustained by the circuit court, the bill being dismissed for want of equity, and the complainant now seeks to obtain a reversal of the decree dismissing the bill. From the facts recited in the bill and the exhibits attached thereto, it appears that on May 7, 1890, one Robert H. Doran had made a homestead entry of the land in the United States land office at Duluth, Minn., which he subsequently relinquished, and thereupon the complainant filed this relinquishment in the land office, and made application to be allowed to enter the same in her own behalf. On November 18, 1890, Richard Dowman, the defendant, filed in the land office an application for the entry of the land as a homestead, accompanied with an affidavit stating that he had made an actual settlement on the land on the 19th of September, 1890, having built a house thereon, and that he was in exclusive possession of the premises when Doran's entry was relinquished, on the 24th of October, 1890. For the purpose of determining the rights of the parties, hearings were had before the receiver and register of the local land office, who did not agree in their conclusions, and the case then went before the commissioner, who decided in favor of the complainant, Moss, and thereupon an appeal was taken to the secretary of the interior, before whom the matter was fully heard, and by whom the facts were determined, and stated as follows: "The land involved in this controversy lies in the First school district of Cook county, state of Minnesota. This county is a very large one, being fifty miles long east and west, and eighteen miles wide north and south at the east end, and fifty miles wide north and south at the west end. The northern line of the county is the southern line of Canada. The land in controversy lies in the northern central part of Cook county, near the Canadian line. To use a description made by Miss Moss, the defendant, 'the land was situated in the wildest and most unbroken wilderness, without roads, or even foot trails, through Minnesota for the settlements, distant by rail from Duluth over nine hundred miles. The nearest post office is fifty miles away, and telegraph nearly one hundred miles distant.' Richard Dowman, the settler and contestant in the case, had lived for a number of years in Grand Marais, the county town of Cook county, distant fifty miles southeast of the land, and in the same school district. He was a member of the First district school board, a county commissioner, was unmarried, and his occupation, besides the two county offices, appears to have been that of an explorer and guide for parties going through that part of the country. The evidence does not show that he had any other visible means of support or possessed much money. Although numerous persons have made homestead entry of this land, none appear to have done so in good faith, for none appear to have made any settlement during the period of five years it was entered and relinquished every six months. Dowman, according to his own testimony, knowing the land had been thus entered and relinquished a number of times without any of the entrymen attempting to make settlement thereon, went on the land September 19, 1890, and began the construction of a house, which he finished October 10th following. From that time he made the land his home, actually living there continuously until November, 1890, with the one exception of a trip to the county town for provisions, which he made October 19, 1890, returning October 24, 1890, the day Doran's relinquishment was filed. From November 1, 1890, to the date of the hearing, he has been temporarily absent for days at a time in Grand Marais, the county town of Cook county, a village of one hundred and twenty inhabitants, but which, although fifty miles distant, lies in the same school district as does the land in controversy. This absenteeism appears owing largely to the fact that Dowman was a member of the school board and a county commissioner, two distinct offices, and to fulfill the duties of which he was compelled to go to the county town. The county town was also the nearest point at which provisions could be obtained. Owing to the distance, the absence of transportation, and the difficulties of the route, it required two days to make the trip, and Dowman appears to have on occasions been absent quite a number of days at a time from his claim. But this does not necessarily show bad faith, and the department always presumes temporary absences to be for good reasons, and, before a contrary reason will be accepted, facts must be disclosed which prove it. In this case no such facts

have been produced, and nothing to show Dowman had any other home than that on the land in controversy, beyond a room, over the store of a friend, which he occupied in the county town on these visits. Moss was a school teacher in Grand Rapids, Mich., and had taught school in cities for a period of twenty years. She was unmarried, about forty years of age, and had $4,000 in cash, and a farm in Dakota yielding an income of from $100 to $250 per annum, while her salary was $60 per month. She bought the relinquishment of the land solely on the representations of her Dakota agent, from Doran, who, as previously shown, had been erroneously allowed to make entry of the land. Without knowing anything of the land except from her agent, and without ever having been nearer than one hundred and sixty miles on an air line, and nine hundred miles by rail, she paid $1,000 for the relinquishment. The evidence shows that at that time Dowman was a settler living upon the land. Returning to Grand Rapids, Mich., over one thousand miles from the land by the nearest route, although she had sworn she made entry on the land with the purpose of making settlement thereon, Moss continued to teach school until the latter part of March, five months after her entry, and after she had been served with a notice of Dowman's contest. The following month she made the trip to the land, arriving there two days before the expiration of the first six months after her entry. Pitching a tent within sight of Dowman's house, in which he was living, she began the erection of improvements so near to Dowman's cabin that the clearings joined, erecting a residence that cost $700, and all the furniture and conveniences that money could buy to make it comfortable for a woman to reside in. All this expenditure and improvement were made in the face and with a knowledge of Dowman's claim and prior settlement, and therefore made at Moss' own risk, and it would appear, for the purpose of defeating his claim, if possible, by means of superior improvements, in spite of the long-established and well-known ruling of this department in such cases. The character or value of Moss' improvements gives her no advantage. Because she had more money than Dowman to expend on improvements does not detract from his rights. In view of these facts, and that no evidence has been introduced which shows that Dowman's settlement was not made in good faith, under the established ruling of this department, the settler Dowman's right attaches instantly on the filing of Doran's relinquishment, and is therefore superior to Moss' entry." Based upon this decision, the land department issued a patent of the land to Richard Dowman, and thereupon the present bill was filed, in which it is prayed that complainant be adjudged to be the owner of the land, and that the defendant holds the legal title as trustee for complainant.

James K. Redington (Warren N. Draper, on brief), for appellant.
L. C. Harris, for appellee.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge, after stating the case as above, delivered the opinion of the court.

In the brief filed by counsel for appellant, it is admitted that it is well settled that "all questions of fact presented and decided in a controverted proceeding, where both parties are heard, are concluded by the department decision, and are binding on the court. But where the officers of the land department have, by a mistake of law, given to one man the land which, upon the facts found, belongs to another, equity will grant relief by putting the title where of right it ought to be." In this case it appears that a controverted proceeding was had between the parties before the secretary of the interior, in which it has been decided that at the time, to wit, October 24, 1890, when complainant made application to enter the land, Dowman was then a settler thereon in good faith, and, this being true as a matter of

fact, the only question of law arising thereon is whether the complainant could make a homestead entry thereof which would be effectual against the pre-existing actual occupancy of Dowman. On behalf of appellant it is argued that Dowman cannot be permitted to take advantage of the entry and occupation by him initiated September 19, 1890, because the land was not then open to homestead entry by reason of the then pending application of Doran; that, the land being thus segregated from the public lands open to entry, the attempt of Dowman to obtain a settlement was illegal, and, the attempted entry being illegal, no rights can grow out thereof, on the principle that no person should be permitted to obtain an advantage by reason of his own wrong or illegal acts. The action of Dowman in going upon the land, for the purpose of making a homestead thereon, was not illegal or wrongful, within the meaning of the rule invoked. When Dowman's entry was made no one was upon the land, and there was nothing to show that any one claimed it, except the entry of Doran's application on the records of the land office at Duluth, some hundreds of miles distant. If Doran's application had ripened into a title, Dowman's actual entry on and settlement of the land would have been ineffectual to defeat it, but it would be effectual and legal against all parties whose rights were acquired subsequent to the entry thus made. By the relinquishment of Doran's claim, the land became again subject to entry, and Dowman's actual possession and occupancy at once became effectual in his favor. His action in taking possession in September, and continuing the same thereafter, might have been ineffectual as against Doran, but such action was not illegal and wrongful in such sense that he cannot claim the benefit thereof as against the appellant, whose entry was not made until the 24th day of October, 1890. The facts show that Doran's entry was relinquished on that day, and the land was then restored to the unappropriated public domain. When this restoration of the land took place, Dowman was a settler thereon in good faith, living on the land, and his rights attached as soon as the land became subject to entry. The facts, as found by the secretary of the interior, show that Dowman was in possession of the land, in good faith, for homestead purposes, during the whole of the 24th day of October, 1890; and, as a matter of fact, it is impossible for the appellant to show that, when she filed her application in the land office on that day, the land was not then in the possession of Dowman, and she is of necessity driven to claim, as matter of law, that Dowman's entry was illegal and wrongful, and that, as her application was filed in the land office at the same time she filed the Doran relinquishment, she becomes entitled to the benefit of the Doran entry, as against the effect of the existing possession by Dowman. The evidence shows that appellant paid Doran $1,000 to relinquish his entry, but by this payment she did not become the assignee of Doran's rights or entry. The payment was made in consideration of Doran relinquishing his entry, in order that thereby the land might be restored to the unappropriated public domain, and thus become open to other entries. It is not open to appellant to insist that she is, in any sense, the successor to, or assignee of, the Doran

entry. The payment to Doran of the sum named created no equity or right in favor of appellant as against Dowman, and the only legal effect that can be given to the relinquishment executed by Doran is that thereby the land became again open to appropriation under the homestead act, and, being thus released from the effect of the Doran entry, the appellant made application at the land office to enter the land, which application is in law effectual from its date; but the fact, as found by the secretary of the interior, is that, when this application was made, the land was then occupied by a bona fide settler, and there is no legal or equitable ground for holding that the right conferred by such prior possession and occupancy must be postponed to the right created by the application filed in the land office.

Counsel for appellant claim that their position is sustained by the ruling of the supreme court in Wood v. Beach, 156 U. S. 548, 15 Sup. Ct. 410. In that case it appeared that Wood, in 1870, had occupied certain lands in Kansas, seeking to make a homestead thereof, which were within the indemnity limits of a railroad grant then existing, and under which the land had been withdrawn from sale or entry by proper orders of the land department, entered in 1867. The final selection of the land under the railroad grant was made in 1872, and the deed from the state to which the title passed under the act of congress was made, in 1873, to the defendant Beach. The supreme court held that the withdrawal orders in 1867 were sufficient to defeat a settlement for homestead purposes taking effect while the orders were in force, because thereby the land was in fact withdrawn from sale or entry, and, as the railway company subsequently perfected its right to the land and made selection thereof, its rights could not be defeated by any supposed equities existing in favor o Wood, who made his homestead entry with full knowledge of the facts. This case would be an authority in point, if the present contest was between Doran, claiming under his entry in the land office, and Dowman, claiming under an actual settlement made after the Doran entry had been filed; but it is not applicable to the question at issue between the present litigants. In the brief submitted for appellant, counsel have cited many decisions of the land department for the purpose of showing that from 1859 to 1885 it was uniformly held "that no right upon cancellation of an entry inured by reason of a settlement made during its existence; that to hold otherwise would be to enable a trespasser to benefit by his own wrong;" and it is therefore claimed, under the rule of stare decisis, that the secretary made a mistake of law in not following the doctrine claimed to be established by the decisions cited; but counsel further show in their brief that, since 1885, modifications of the previous ruling have been made, and recognition has been given to settlements made under circumstances similar to those existing in the present case, and that since August 20, 1890, the rulings of the department are to the effect that a settlement made in good faith and prior in time will be held good as against a filing or application tendered simultaneously with the relinquishment or cancellation of a pre-existing entry. It thus appears that if the secretary in this case had held that

Dowman's entry and settlement, though made in good faith, were not available to him upon the relinquishment of Doran's entry, such ruling would have been contrary to that established by the later decisions of the department; and certainly it cannot be said that, in following the later rulings, the secretary violated any recognized rule of law; and it is only when it is made plain that the officers of the land department have, by a mistake of law, deprived a party of land to which he is rightfully entitled that a court of equity is justified in setting aside the action of the department. Moore v. Robbins, 96 U. S. 530; Marquez v. Frisbie, 101 U. S. 473; Quinby v. Conlan, 104 U. S. 420.

Being of the opinion that the facts set forth in the bill herein filed do not make a case for the intervention of a court of equity, within the rule laid down in the cases cited, it follows that the trial court did not err in dismissing the bill on the merits, and the decree to that effect is affirmed.