## UNITED STATES v. BLENDAUER.

### (District Court, D. Montana. May 18, 1903.)

### No. 101.

1. PUBLIC LANDS—RIGHTS OF HOMESTEAD SETTLERS—CUTTING TIMBER.

One who enters upon a tract of public land which is in fact subject to homestead entry, with the bona fide intention of acquiring title under the homestead law, has the right to cut timber thereon for a house, although he has not yet filed his entry, and he cannot be held liable for trespass, and for the value of the timber so cut and used, although the local land office had previously been ordered by the land department not to accept any filing on such land.

**2. SAME—FOREST RESERVES—PROCLAMATION—SETTING APART.**

A proclamation setting apart public lands as a forest reservation under Act March 3, 1891, § 24, 26 Stat. 1103, c. 561 [U. S. Comp. St. 1901, p. 1537], need not be signed by the President, but, if made by the Secretary of the Interior, will be presumed to have been by direction of the President.

**3. SAME—LANDS SUBJECT TO BE SET APART AS RESERVE—"PUBLIC LANDS."**

The 15 townships of land in the Bitter Root valley, Mont., formerly occupied by the Flathead Indians, which, by the terms of Act June 5, 1872, 17 Stat. 226, c. 308, providing for the removal of the Indians therefrom, were made subject to sale, but not to entry under the homestead or pre-emption laws, are not public lands in the sense of being a part of the general public domain; and since the authority given the President by Act March 3, 1891, § 24, 26 Stat. 1103, c. 561 [U. S. Comp. St. 1901, p. 1537], to set apart lands as forest reserves is confined to such public lands, the President has no power to set apart any of the lands in said 15 townships as such reserve, but, notwithstanding a proclamation purporting to create a reserve thereon, they remain subject to entry or settlement under the acts of Congress relating thereto.

On Demurrer to Answer.

Carl Rasch, U. S. Atty.

T. J. Walsh, for defendant.

KNOWLES, District Judge. In this case the plaintiff alleges that it is the owner of the southeast quarter of section 17, in township 4 north, of range 21 west of the Montana principal meridian, in the state and district of Montana, which lands are alleged to be situate within the exterior boundaries of the so-called "Lake Como Forest Reserve," in the Missoula, Mont., land district. It is further alleged that during the month of November, 1901, the defendant wrongfully and unlawfully entered upon the said above-described lands of the plaintiff, and did then and there wrongfully and unlawfully cut down a large amount of timber then and there growing upon the said lands and belonging to the plaintiff, to wit, 20 trees, of the value of $28, and converted and disposed of the same to his own use and benefit. It is further alleged that by reason of the wrongful acts of the defendant, as aforesaid, the plaintiff lost the said trees, and the plaintiff's lands were damaged to the amount of $100. Judgment is asked for against the defendant for the sum of $28, the alleged value of the trees, and the further sum of $100 for damages and for the costs.

The defendant has answered, and among other things denies that the lands described in the complaint are, or at any time since the 15th day of July, 1899, were, owned by the plaintiff, except subject to his rights; denies that there is any Como reserve, or that such reserve was ever set apart by the President of the United States, by proclamation or otherwise, or that any reserve or reservation embracing said lands was ever established. Defendant avers that the lands described in the complaint are not, and since the 8th day of March, 1859, and since the 5th day of June, 1872, have not been, public lands, and that neither the President of the United States, nor any officer thereof, has the right, or has ever had the right, power, or authority, to set apart as, or declare the lands mentioned in the complaint to be, a part of any forest reservation. It is further averred that the lands

mentioned, in the complaint are embraced within the 15 townships above the Lo Lo Fork of the Bitter Root river, in the Bitter Root valley, referred to in the act of Congress approved June 5, 1872, 17 Stat. 226, c. 308, as such townships have been definitely fixed and determined by the survey and maps of the said Bitter Root valley, approved by the Department of the Interior. It is further averred that on February 3, 1892, an order was transmitted by the Commissioner of the General Land Office to the Register and Receiver of the United States Land Office, at Missoula, Mont., purporting to reserve from disposition, under the general laws of the United States, certain lands in the Bitter Root valley, embracing the lands described in the complaint herein, and designating the said lands as the "Lake Como Forest Reserve," and that, save for the said order, no act was ever done or performed by the President of the United States or by the land department creating or purporting to create any forest reserve embracing the lands mentioned in the complaint. It is further averred that on or about July 14, 1899, the Commissioner of the General Land Office addressed a letter to the Register and Receiver of the United States Land Office, at Missoula, Mont., directing the said officers not to dispose of certain lands in the Bitter Root valley embracing the lands mentioned in the complaint herein, and purporting to set apart and reserve the same, pending the determination of the advisability of including the same in the Bitter Root forest reserve; but that no action has ever been taken by the President of the United States or by the land department of the government to embrace or include the same in the said Bitter Root forest reserve. It is further averred that he is, and at all times herein mentioned was, a citizen of the United States, over the age of 21 years, and that he has never entered any lands under the provisions of the homestead act, and that on July 15, 1899, he settled on the lands mentioned in the complaint herein with the intention at the time to enter the same and acquire title to the same under the provisions of the homestead law of the United States; that with a view to the perfection of his settlement upon said lands, and to enable him to construct a house thereon, and to establish his residence thereon, he cut down certain trees growing thereon, intending to use the logs which might be hewed therefrom to construct a residence for himself upon said land, and that the said trees so cut down were used by the defendant on the said land in constructing his said residence, and that the trees so cut down are the trees referred to in the complaint herein as having been on the said land wrongfully and unlawfully cut down, and that the use of the same in the construction of his said residence constitutes the conversion and disposition of the same referred to in the complaint, and that the entry so as aforesaid made by the defendant upon the said lands for the purpose of making a settlement thereon with a view to acquire title to the same under the homestead laws of the United States constitutes the entry complained of in the complaint; and by reason of the facts aforesaid the defendant denies that his said entry was wrongful or unlawful, or that his cutting of the said timber was wrongful or unlawful, or that he converted the same. There is also a denial of damages.

122 F.—45

The plaintiff has filed a general demurrer to this answer.

Considering the arguments and briefs of counsel, it seems to be conceded that, if the land upon which defendant cut the trees was not public land, as that term is used in the statutes of the United States and in the decisions of the Supreme Court, at the time the same was made a part of the Lake Como forest reserve, or the reserving of the same with that view, then defendant was not guilty of any trespass. As I view the case, there can be no doubt but the plaintiff was the owner of the land upon which the trees were cut, and defendant would be guilty of a trespass, if, clothed with no permission from the United States, he entered upon the same, and cut the said trees, notwithstanding the land might not be lawfully subject to be set apart as a forest reserve. In U. S. v. Yoder (D. C.) 18 Fed. 372, Judge Nelson said of the case there presented:

"The naked question presented is whether or not a settler claiming in good faith a homestead can, for the purpose of improving the land, cut down the necessary timber before he files his entry in the land office," and answers: "I find nothing in the homestead act forbidding it, and, if the settler is acting in good faith, the fact that the time above specified intervened between the settlement and filing of the entry would not prevent him from doing in the meanwhile that which good husbandry would dictate."

A homestead entry may be made in the land office at any time after settlement, and before another party commences a settlement thereon, or files an application therefor. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485. There appears no such complication in this case. A party, after settlement, and until he makes entry at the land office, would seem, in a case like this, to have the same rights as any other homestead settler.

But there is another point in this case. It appears from the answer herein that the local land office had been prohibited from accepting any filings upon land in the condition of that upon which the trespass is alleged to have been committed. In the case of Tarpey v. Madsen, 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042, the court said:

"The right of one who has actually occupied public land with an intent to make a homestead or pre-emption entry cannot be defeated by the mere lack of a place in which to make a record of his intent."

Again:

"Where the accident or omission is not the fault of the party, but of the government, or some official of the government, such accident or omission cannot defeat the right of the individual."

Under this view I am of the opinion that the defendant must be treated as a homestead settler if the land was subject to homestead entry.

In the case of Shiver v. U. S., 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231, the Supreme Court, after discussing the position of a homestead settler upon the public domain, says with respect to the standing timber his privileges are analogous to those of a tenant for life or for years. After stating what the privileges of such a tenant are, the court proceeds:

"By analogy, we think the settler upon a homestead may cut such timber as is necessary to clear the land for cultivation, or to build him a house.

outbuildings, and fences, and perhaps may exchange such timber for lumber to be devoted to the same purposes."

The defendant, a bona fide homestead settler, having the right to cut timber for the purpose of building himself a dwelling house upon the land settled upon by him, if the same was subject to homestead entry, the question arises as to whether the land was, in fact, subject to such entry. The President of the United States, under the provisions of the act of March 3, 1891, c. 561, § 24, U. S. Comp. St. 1901, p. 1537, 26 Stat. 1103, may, from time to time, set apart and reserve, in any state or territory having public lands bearing forests, in any part of the public lands wholly or in part covered with timber or undergrowth, whether of commercial value or not, as public reservations, and the President shall, by public proclamation, declare the establishment of such reservations and the limits thereof. It will be seen that it is only public land which can so be set apart. It is claimed that no public proclamation by the President setting apart these lands as a forest reservation was ever made. The proclamation setting apart the Lake Como forest reserve was made by the Secretary of the Interior. It was not necessary that the President should sign this proclamation. It will be considered as having been done by the Secretary with his approval. Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; Wolsey v. Chapman, 101 U. S. 755, 25 L. Ed. 915; U. S. v. Macon County Court, 145 U. S. 202, 217, 12 Sup. Ct. 921, 36 L. Ed. 544. The truth is, however, that the President, or a head of a department of the government, cannot reserve any public lands from sale except when authorized by some treaty, law, or authorization by Congress. Wolsey v. Chapman, supra. This court, in Northern Pacific R. R. Co. v. Hinchman (C. C.) 53 Fed. 523, held that the 15 townships mentioned in the act of June 5, 1872, 17 Stat. 226, c. 308, were not public lands, and hence not subject to the grant to the Northern Pacific Railroad. This view was affirmed by the Circuit Court of Appeals for the Ninth Judicial Circuit in the case of Northern Pacific R. R. Co. v. Maclay, 9 C. C. A. 609, 61 Fed. 554. It is true that in considering this question one of the acts of Congress in regard to these lands was not brought to the attention of this court, and hence not considered in connection therewith. That act was an appropriation act, and the provisions relating to or affecting these lands reads as follows:

"For the second of ten installments, to be paid, under direction of the President, to the Flathead Indians removed from the Bitter Root Valley to the Jocko reservation, in the territory of Montana, five thousand dollars: provided, that the proceeds of the sales of land in Bitter Root Valley, Montana Territory, referred to in the second section of the act of Congress approved June fifth, eighteen hundred and seventy-two, entitled 'An act to provide for the removal of the Flathead and other Indians from the Bitter Root Valley, in the Territory of Montana,' shall be paid into the treasury of the United States; in the same manner that other moneys derived from the sale of other public lands are now paid in: and provided further, that in lieu of the amount provided to be set apart therefrom by the act of Congress of June fifth, eighteen hundred and seventy-two, hereinbefore referred to there shall be annually appropriated, out of any money in the treasury of the United States, not otherwise appropriated, the sum of five thousand dollars, for the period of ten years, to be expended, under the direction of the

President, in the manner deemed for the best good of the Indians who have been removed from Bitter Root Valley: and provided further, that no part of said sum shall be paid to any Indian of said tribe who shall not have settled upon the Jocko reservation."

But I am satisfied that this act does not restore the said 15 townships named in the act of June 5, 1872, to what is denominated the "public lands" of the United States. In that act (17 Stat. 226) it is provided that said lands shall not be subject to the pre-emption and homestead laws of the United States. This provision of said act was not repealed so far as the pre-emption laws are concerned. As the law now stands, the sale of those lands is to be to actual settlers who are citizens of the United States, or have declared their intention to become such, and heads of families, or over the age of 21 years, who must pay therefor $1.25 per acre in 21 months. Under the pre-emption law as it existed at the time of passage of said act of 1874 (Act Feb. 11, 1874, c. 25, 18 Stat. 15), a settler was required to make final proof and payment for his lands entered under the same within 30 months. A settler under the pre-emption . law could not enter any of said lands if he already owned 320 acres of other lands in any state or territory of the United States, and was also required to inhabit said land, improve the same, and erect a dwelling thereon. See section 2259, Rev. St. This act of June 5, 1872, pertains to said 15 townships to-day. Although the pre-emption law has been repealed, this act of June 5, 1872, so far as the purchasing of said lands is concerned, exists and remains in force to-day. The general pre-emption laws of the United States were repealed in 1891. These facts show that the act of 1874 did not restore said lands to the general mass of the public domain, or ever make them public lands, if in fact they ever were such. Now, these not being public lands, they could not lawfully be set apart or reserved by the President or any head of department as a forest reserve. In the case of Wilcox v. Jackson, supra, it is said:

"Whensoever a tract of land shall have once been legally appropriated for any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands, and no subsequent law or proclamation or sale would be construed to embrace it, or to operate upon it, although no other reservation were made of it."

The President had and has no power to declare any lands a part of a forest reserve except public lands; and the term "public lands," as used in the legislation of Congress, describes such lands as are subject to sale or other disposition under general laws. Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769. The proclamation under which it was or is sought to make the land settled upon by the defendant in this case a part of the Lake Como Forest Reserve was and is void. The defendant had a license to go upon the land, settle upon it, cut timber wherewith to build him a dwelling house thereon. The land department of the government has not been very consistent in the consideration of this question. In the case where the state of Montana sought to select in the Bitter Root valley and upon the 15 townships named lands for a school of mines, land for a normal school, and lands for a deaf and dumb asylum, Assistant Commissioner Rose, of the

General Land Office, held "that lands to be selected for such purposes could only be selected from public lands, and that these were not public lands subject to be disposed of under the general laws of Congress pertaining thereto." On February 22, 1900, Mr. Binger Herman, the Commissioner of the General Land Office, held that the very lands involved in this case were public lands, and were a part of the Lake Como forest reserve under and by virtue of the authority of the Secretary of the Interior, and he cites, as supporting the position as to the right of the secretary to so set them apart, Wolsey v. Chapman, supra. Now, that case is only authority upon the point that when the President has the right, under the provisions of the act of March 3, 1891, to set apart lands for a forest reserve, the Secretary of the Interior may make the order. Here, as we have seen, the lands were not such public lands as could lawfully be embraced within such a forest reserve. On February 13, 1902, the Secretary of the Interior held that the lands were not such public lands as could be taken up under the act of June 3, 1878, c. 151, 20 Stat. 89, known as the "Timber and Stone Act"; that the lands embraced in the aforesaid 15 townships were not such public lands as could be taken up or entered under the provisions of that act. This decision shows that the department held at that time that these lands were not public lands as could be disposed of under the general laws of Congress.

Holding, as I do, that only such lands can be set apart as a forest reserve, and holding that these lands embraced in said 15 townships are not of that class, it follows that the demurrer to the defendant's answer herein must be overruled.