UNITED STATES v. BAGNELL TIMBER CO.

(Circuit Court of Appeals, Eighth Circuit. March 5, 1910.)

No. 3,050.

1. PUBLIC LANDS (§ 13*)—ILLEGAL CUTTING AND REMOVAL OF TIMBER—ACTION FOR CONVERSION—BONA FIDE PURCHASER.

In an action by the United States to recover the value of timber unlawfully cut from public lands and alleged to have been converted by defendant, it is not a defense that defendant purchased the timber in good faith from the person who cut and removed it; his title being no better than that of his vendor.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 16; Dec. Dig. § 13.*]

2. PUBLIC LANDS (§ 114*)—PATENTS—RELATION.

A patent issued on a homestead entry relates back to the time of the entry only.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 315; Dec. Dig. § 114.*]

3. PUBLIC LANDS (§ 35*)—HOMESTEAD ENTRIES—OCCUPANCY BEFORE ENTRY—"SQUATTER."

One who takes possession of a tract of public land with a view to becoming an entryman under the homestead law, except as to the limited statutory time allowed him preceding actual entry at the land office, is a mere "squatter" having no rights in the land as against the government or others.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 76; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 7, p. 6619.

Rights acquired by homestead settlements and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

4. PUBLIC LANDS (§ 40*)—RIGHTS ACQUIRED BY OCCUPANCY—EXISTING UNCANCELED ENTRY.

So long as a homestead entry of public land, valid on its face, remains of record, no entry can be made by another, and no rights can be acquired by occupancy, even though there has been an actual abandonment by the homestead entryman.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 100–102; Dec. Dig. § 40.*]

5. PUBLIC LANDS (§ 13*)—ILLEGAL CUTTING OF TIMBER—ABANDONED HOME-
STEAD.

In an action by the United States to recover for timber taken from a
tract of public land at the time covered by a homestead entry which had
in fact been abandoned and was afterward relinquished, it is not a de-
fense that the land was at the time of the trespass occupied by another,
who after the relinquishment filed and perfected a homestead entry
thereon.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 13.*]

Adams, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern
District of Missouri.

Action by the United States against the Bagnell Timber Company.
Judgment for defendant, and plaintiff brings error. Reversed.

Truman P. Young, Asst. U. S. Atty. (Henry W. Blodgett, on the
brief), for the United States.

Byron F. Babbitt, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON,
District Judge.

SMITH McPHERSON, District Judge. This is an action by the
government to recover of the defendant the value of timber taken from
160 acres of land within the state of Arkansas. There was an amended
petition in two counts, one of which charges that defendant did will-
fully and unlawfully cut and take from the land certain timber, con-
verting the same into railroad ties of the value of $313. The other
count charges that one Somers unlawfully cut from the land certain
timber and the same was converted into railroad ties, and that defend-
ant appropriated the same to its own use and of the same value as
stated in the first count. From the pleadings it appears that May 25,
1897, one William J. Davis entered the land under the homestead laws,
and he took possession under said entry, which entry remained in force
as evidenced by the records until April 8, 1904, when Davis filed at the
proper United States Land Office his relinquishment to said lands.
August 26, 1905, one Robert G. Martin formally entered the land un-
der the homestead law, and October 8, 1907, the proper United States
officers issued a patent in the name of the government to Martin for
the lands.

Paragraphs 3 and 4 of the answer to the first count are to the effect
that Davis abandoned and deserted his homestead during the year 1898
and never since occupied the same; that he filed his relinquishment
April 8, 1904. Further, the answer recites that in 1902, after the
abandonment by Davis of the homestead, Robert G. Martin actually
settled in good faith upon the lands as a homesteader and was in
actual possession thereof and engaged in improving the same at the
time of the alleged trespass; and that August 26, 1905, subsequent to
the abandonment by Davis, and after Davis had formally relinquished
the same, Martin entered the land as a homestead at the proper United
States Land Office, and in October, 1907, received his patent. It is
further recited that defendant is engaged in the business of buying and

selling and dealing in railroad ties, and was so engaged during the year 1903; that between February 1, 1903, and October 31, 1903, defendant purchased from the said Somers the said railroad ties, which defendant is informed and believes were originally cut from said homestead by divers persons to the defendant unknown; that the defendant purchased the same from Somers in good faith, without any knowledge on defendant's part as to the tract or tracts of land from which the said ties were originally cut and taken; and that defendant itself did not cut or take any of the timber or ties from the said homestead quarter section.

To said paragraphs the government filed a demurrer, which was by the court overruled.

The answer to the second count is substantially like the answer to the first count, except that the answer is not divided into paragraphs. But like recitals are made as a defense to the second count, which were assailed by a motion to strike out. This motion was by the court overruled.

The government declined to plead further, whereupon judgment was rendered in favor of the defendant, and a writ of error was sued out to reverse the judgment.

As to defendant being a good-faith purchaser, nothing further need be said than to call attention to the case of Woodenware Company v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, where the measure of recovery is fully established; the wide difference being as to whether the timber was inadvertently cut, or was taken by willful trespass, and holding that a defendant purchaser stands in the shoes of his vendor.

This action was brought February 5, 1908. Martin obtained his patent October 8, 1907. August 26, 1905, Martin formally entered the lands as a homestead by filing his entry at the proper land office. May 25, 1897, Davis entered the land and lived thereon for a time, when he abandoned the same and never has resided thereon since. He filed his formal relinquishment April 8, 1904. The alleged trespasses were committed in the year 1903, at which time Martin was on the land.

This action was brought after the lands had gone to patent to Martin. It will also be seen that the trespasses were at a time when the entry of Davis was in apparent force, as shown by the records, but at a time when in fact Davis had abandoned the lands, and at a time when Martin was in possession, but more than a year before Martin had filed his entries. It is not made to appear how it was that Martin secured his patent within about two years after having made his entry. Possibly he had been a soldier in the Civil War, and was allowed to have the deduction from the five years, of the time of his military service. Possibly he elected to pay the government for the land. Possibly the patent was issued under a mistake of law. These things are only matters for surmise. The court below evidently held that Martin's patent related back to the time that Martin went on the land, and not to the time that he filed his entry at the district land office. And this is the question for decision by this court.

To enter land under the homestead law one must make an affidavit as to his age, that he is the head of a family, that the application is

made in good faith and for his own use, and not for the benefit of another, that he will faithfully comply with the requirements of the law as to settlement, residence, and cultivation, and must make payments of the statutory fee, and no patent shall be given until the expiration of five years, and then only upon proof that he has resided upon the land for five years preceding. If it is proved that a person has abandoned his land for more than six months, the land shall upon due proceedings had revert to the government; or, if he files a written relinquishment, without proceedings the land reverts to the government. It is provided by statute that one who settles upon the public land shall be allowed the same time to file his homestead application and procure his original entry as is allowed to settlers under the pre-emption laws, and his entry shall relate back to the date of the settlement of the same as if he settled under the pre-emption laws. Section 2264 of the Revised Statutes, with reference to settlements under the pre-emption laws, requires that a person shall within 30 days after the date of his settlement on the land file with the district land office a written statement describing the land and declaring his intention to claim under the pre-emption laws, and shall within 12 months thereafter make proof of the payments required, failing in which the land shall be subject to entry by another.

From the foregoing it will be seen that the pre-emption laws were distinguished from the homestead laws by the fact that the homestead laws do not contemplate an actual occupation of the land prior to the filing of the original entry; whereas, the pre-emption laws did contemplate an actual occupation prior to the filing of the claim. Under the pre-emption laws the party was required to make his claim within 30 days after the date of his occupancy of the land, and within one year thereafter was required to make final proof and payment, failing in which the land became government property.

The doctrine of relation is frequently applied both as to public lands, and as to contracts and deeds between individual grantors and grantees. This doctrine is nothing more than that, where different things are to be done before the title passes, such title when it does pass shall be adjudged to have passed at the time when the first act necessary to acquire the title was brought about. But by the doctrine of relation the title is never adjudged to have passed at a time prior to the first legal step, or the first act done in the chain of acts ripening into an actual conveyance. Where the preliminary steps have been taken to acquire the title to public lands, the government holds the same in trust for the claimant. And when the patent is acquired, the patentee takes title as of the date of his entry; but, failing to secure his patent, the government will be deemed to have been the owner absolute during all of the time.

The case of United States v. Detroit Timber & Lumber Company, 131 Fed. 668, 67 C. C. A. 1, was before this court. And the Supreme Court of the United States had the same case, as reported in 200 U. S. 321, 334, 335, 26 Sup. Ct. 282, 286 (50 L. Ed. 499), in which Justice Brewer said:

"It is sufficient to say that by the doctrine of relation the patents when issued became operative as of the dates of the entries."

That expression states the law tersely, but with accuracy. One who takes possession of a tract of land with a view of becoming an entry-man under the homestead law is a mere "squatter," except as to the limited statutory time allowed him preceding actual entry at the land office, and except during that brief statutory time he has no rights whatever that either the government or any other person is bound to respect. Any other person could file his entry by making the requisite proof and paying the statutory fees, and would have all the rights un-der the homestead statute which, followed by possession and a compli-ance with the law, would carry the land to a patent to him. And the cases cited in the opinion by the Supreme Court do not leave much further to be said.

Martin could take no legal steps to acquire this land under the home-stead or any other statutes until the entry of Davis was out of the way. There cannot be two dispositions covering concurrent time by the gov-ernment of the same tract of land. While one grant legally or equit-ably is outstanding, a second grant cannot be made. Thus it was held in the case of Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906, where there had been a pre-emption claim recognized on the land in controversy, which was subsequently canceled, and these lands were within the limits of a railroad grant, that before this can-cellation of the pre-emption claim the lands were not subject to a fur-ther grant. But it was held that the subsequent cancellation of the pre-emption claim which was subsequent to the railroad grant caused the land to revert to the government, and again became a part of the public domain.

In the case of Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363, it was held that:

"So long as a homestead entry, valid upon its face, remains a subsisting entry of record whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and precludes it from a subsequent grant by Congress."

After reviewing several authorities, Justice Lamar, speaking for the court, said:

"In the light of these decisions, the almost uniform practice of the depart-ment has been to regard land, upon which an entry of record valid upon its face has been made, as appropriated and withdrawn from subsequent home-stead entry, pre-emption settlement, sale, or grant until the original entry be canceled or declared forfeited; in which case the land reverts to the govern-ment as part of the public domain, and becomes again subject to entry under the land laws."

In the case of Bardon v. Northern Pacific R. Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806, it was stated that at the time of the grant of the railway company of July 2, 1864, the land had been segre-gated from the public domain by a pre-emption claim, and subsequent to July 2, 1864, the pre-emption claim was canceled. It was held that, by reason of the subsequent cancellation of the pre-emption claim, all the lands revert to the government and do not pass to the railway com-pany by its grant.

So that at the time of the alleged trespass in this case the govern-ment owned this tract of land, subject only to the possibility that the

entry of Davis would ripen into a patent. Subsequent to the trespass, the Davis entry was canceled by the filing of his own voluntary relinquishment. Until that was done under the authorities above cited, Martin could take no legal step to gain a foothold on this land, and he could do no act until the cancellation of the Davis entry that could possibly later on ripen into a patent to him.

Some of the cases cited by defendant's counsel will be noticed.

United States v. Blendauer (D. C.) 122 Fed. 703, was decided on the circuit. The point decided was that the defendant in possession with the purpose of homesteading, but prevented from filing his declaration by the fault of the officers of the government, should receive protection.

Tarpey v. Madsen, 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042, avails nothing here. What was in that case decided was:

"The right of one who has actually occupied public land, with an intent to make a homestead or pre-emption entry, cannot be defeated by the mere lack of a place in which to make a record of his intent."

But it was likewise held that, if one could file the entry, then the record thereof is the only evidence for consideration.

Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. Ed. 761, holds that:

"A claim of the homestead settler, such as Smith's, is initiated by an entry of the land, which is effected by making an application at the proper land office, filing the affidavit and paying the amounts required by sections 2238 and 2290 of the Revised States." [1]

And the holding was further that the patent would relate back to the entry.

Maddox v. Burnham, 156 U. S. 544, 15 Sup. Ct. 448, 39 L. Ed. 527, is covered by the syllabus, which reads:

"In the year 1866 the mere occupation of public land, with a purpose at some subsequent time of entering it for a homestead, gave the party so occupying no rights."

In Ard v. Brandon, 156 U. S. 537, 15 Sup. Ct. 406, 39 L. Ed. 524, it was held that occupancy with the intention to pre-empt, although denied that right by the land office, gave him an equity.

Trodick v. Northern P. R. Co., 164 Fed. 913, 90 C. C. A. 653, was with reference only to unsurveyed lands, and the right of one in occupancy who was given by statute three months after the survey was made and filed in which to file his entry. It was held that such occupancy would prevent the lands from passing by the grant to the railroad company.

Moss v. Dowman, 176 U. S. 413, 20 Sup. Ct. 429, 44 L. Ed. 526, was a case carried from this court as reported in 88 Fed. 181, 31 C. C. A. 447. The point to that case was in the fact that there was an entry of record. Another party was in possession. A third party procured the relinquishment of the first party, and then filed his entry. It was held that the second party in possession would prevail as against the third party.

The case of Teller v. United States, 117 Fed. 577, 54 C. C. A. 349, decided by this court, throws but little or no light on the case at bar.

[1] U. S. Comp. St. 1901, pp. 1367, 1389.

All that can be claimed is that in that case it was held that, when the party made payment for his lands, his title would relate back to his entry made of record.

It seems clear that it should be ruled in this case that for a trespass long time prior to the entry of Martin creates a cause of action in favor of the government, and the mere fact of Martin's then possession is no defense. And it should be kept in mind that this is not a controversy between Martin and some entryman. To hold that trespassers and their vendees can plead the doctrine of relation back for more than a year prior to an entry which ripens into a patent is to throw the public lands open to squatters, and to change the spirit of the homestead laws in all of its beneficence, to a cloak for depredators.

The judgment of the Circuit Court is reversed, with directions to sustain the demurrer of the government to paragraphs 3 and 4 of the answer to the first count of the amended petition, and to sustain the motion to strike out like allegations in the answer to the second count.

And it is so ordered.

ADAMS, Circuit Judge, dissents.