# THE UNITED STATES OF AMERICA *vs.* MAX SCHLEMMER.

## May 5, 1910.

*Penal laws—Construction of:*   While full effect must be given to the language found in a penal statute, the intention of Congress is to be found in the language actually used interpreted according to its fair and obvious meaning.

*Same—Bird reservations:*   The rule of strict construction applicable to penal statutes prevents the construing of section 84 of the criminal code as including a grant of power to the President to set apart breeding grounds for birds.

*Indictment—Sufficiency of:*   An indictment charging the hunting, etc., of birds, the species whereof are unknown, does not state an offense under section 84 of the criminal code where a reservation has been made for a preserve and breeding ground for native birds only.

*Same—Negativing exceptions:*   An indictment under section 84 of the criminal code should allege that the acts done were not done under rules and regulations prescribed by the Secretary of Agriculture.

*Criminal Law*:   Demurrer to indictment.   Indictment under section 84 of the Criminal Code of the United States (35 Stat. 1104).

*R. W. Breckons,* U. S. District Attorney, for the United States.

*Thompson, Clemons & Wilder,* for the Defendant.

ROBERTSON, J.   In this case the indictment charges that the defendant, on the fifth day of January, 1910, did "unlawfully and wilfully hunt, trap, capture, disturb and kill, numerous birds, the exact number thereof, and the exact species thereof, being to the grand jurors unknown; the said birds, at the time of said unlawful and wilful hunting, trapping, capture, disturbance and killing, being on certain grounds belonging to the

United States of America, and within the Territory and District of Hawaii, to-wit, a certain island in the Pacific Ocean, known as Laysan Island, theretofore and on, to-wit, the third day of February, in the year of our Lord nineteen hundred and nine, set apart, under the name of and designated as the Hawaiian Islands Reservation, by the executive order of Theodore Roosevelt, at that time President of the United States of America, as a preserve and breeding ground for native birds; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendant demurs on several grounds, the following of which are relied on : That the executive order referred to in the indictment was invalid and unauthorized by any law; that the defendant could, in any event, be indicted for hunting, etc., only native birds, whereas it is alleged that the exact species of birds hunted, etc., is unknown; and that the indictment fails to charge an offense in that it does not allege or show that the hunting, etc., of the birds was under such circumstances as to be unlawful.

On February 3, 1909, an executive order, of which the court takes judicial notice, was issued by President Roosevelt. It was as follows :

" It is hereby ordered that the following islets and reefs, namely : Cure Island, Pearl and Hermes Reef, Lysianski or Pell Island, Mary Reef, Laysan Island, Dowsett's Reef, Gardiner Island, Two Brothers Reef, French Frigate Shoal, Necker Island, Frost Shoal and Bird Island, situated in the Pacific Ocean at and near the extreme western extension of the Hawaiian Archipelago between latitudes twenty-three degrees and twenty-nine degrees north and longitudes one hundred and sixty degrees and one hundred and eighty degrees west from Greenwich, and located within the area segregated by the broken lines shown upon the diagram hereto attached and made a part of this order, *are hereby reserved and set apart,* subject to valid existing rights, for the use of the Department of Agriculture as a *preserve and breeding ground for native birds.*

It is unlawful for any person *to hunt, trap, capture, will-fully disturb, or kill* any bird of any kind whatever, or take the eggs of such birds within the limits of this reservation, except under such rules and regulations as may be prescribed from time to time by the Secretary of Agriculture.

Warning is expressly given to all persons not to commit any of the acts herein enumerated and which are prohibited by law.

This reservation to be known as the Hawaiian Islands Reservation.

    The White House,
        February 3, 1909.

                                THEODORE ROOSEVELT."

Section 84 of the criminal code, which is, substantially, a reenactment of the act passed on June 28, 1906, entitled "An act to protect birds and their eggs in game and bird preserves," provides that, " Whoever shall hunt, trap, capture, willfully disturb, or kill any bird of any kind whatever, or take the eggs of any such bird, on any lands of the United States which have been set apart or reserved as breeding grounds for birds, by any law, proclamation, or executive order, except under such rules and regulations as the Secretary of Agriculture may, from time to time, prescribe, shall be fined not more than five hundred dollars, or imprisoned not more than six months, or both."

## I.

First, as to the validity of the executive order. It is contended on behalf of the defendant that the order was void and of no effect because the President had no inherent power to make it; that there was no express statutory authority for making it; and that authority so to do cannot be implied from section 84 of the code.

The district attorney does not contend that the President had any authority merely *virtute officii* to make the order, nor that he had any express statutory power to make it, his contention being that the requisite authority is to be implied from the provision of the code referred to.

Whether or not the language of that provision conferred upon

the Secretary of Agriculture authority to prescribe rules and regulations it is not necessary to decide. Suffice it to note that the language used was not as explicit as that found in the act of Congress of February 9, 1909, relating to the importation of opium, for example, which contains a proviso, "that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations *which the Secretary of the Treasury is hereby authorized to prescribe.*"

The words of the provision of the code, "which have been set apart or reserved," would seem to imply that the reservation should be made, if at all, by virtue of some other law, or under a proclamation or order made by authority of some law other than the code provision itself.

The contention of the district attorney would require the court to read into the statute a grant of authority to the President to reserve and set apart lands for breeding grounds for birds.

It seems to me that the rule of strict construction which is applicable to penal statutes prevents that.

Full effect must, of course, be given to the language found in the statute, and, in regarding this provision of the code as a general one intended to provide a penalty for doing injury to birds and their eggs on such breeding grounds as may, from time to time, be set apart as such by statute or pursuant to authority conferred by law, I think that such effect is given.

That penal statutes are to be construed strictly has been held by the Supreme Court in a long line of cases following *United States v. Wiltberger,* 5 Wheat. 76.

In the recent case of *United States v. Harris,* 177 U. S. 305, the court, in reply to the contention that the rule had been relaxed, said, "Giving all proper force to the contention of the counsel for the government, that there has been some relaxation on the part of the courts in applying the rule of strict construction to such statutes, it still remains that the intention of a penal statute must be found in the language actually used, interpreted according to its fair and obvious meaning."

The fact that Congress has frequently, in legislating on analogous subjects, deemed it necessary to expressly authorize the setting apart of public lands for special purposes, tends to support the view I take of the statute in question.

In an act passed on March 3, 1891 (26 Stat. L. 1095), relating to timber lands, it was provided, sec. 24, " That the President of the United States may, from time to time, set apart and reserve, in any State or Territory having public land wholly or in part covered with timber or undergrowth, whether of commercial value or not, as public reservations, and the President shall, by public declaration, declare the establishment of such reservations and the limits thereof."

In an act passed on January 24, 1905 (33 Stat. L. 614), entitled "An Act for the protection of wild animals and birds in the Wichita Forest Reserve," the first section authorized the President "to designate such areas in the Wichita Forest Reserve as should in his opinion, be set aside for the protection of game animals and birds and be recognized as a breeding place therefor."

In an act passed on June 29, 1906 (34 Stat. L. 607), entitled "An Act for the protection of wild animals in the Grand Canyon Forest Reserve," the President was likewise expressly authorized to designate such areas in said reserve as should in his opinion be set aside as breeding places for game animals. That act, it will be observed, was passed on the day following the passage of the act of which section 84 of the code is a re-enactment.

From the view above taken it necessarily follows that the Executive order referred to was without effect.

In the case of *United States v. Blendauer,* 122 Fed. 703, a proclamation of the President purporting to set apart as a forest reservation certain lands in the Bitter Root Valley, in Montana, was held to be void because the lands so attempted to be set apart were not "public lands" in which the President was authorized to declare the establishment of such reservation

within the meaning of the act of March 3, 1891, hereinabove referred to.

## II.

The next point is that, whereas the executive order reserves and sets apart the islands named "as a preserve and breeding ground for native birds," the indictment charges the defendant with hunting, etc., numerous birds "the exact species thereof being to the grand jurors unknown." The contention here is that as the reservation was made, if at all, only for a preserve and breeding ground for native birds, it would not be an offense to hunt or kill, on the reservation, birds other than native birds, and that, therefore, the indictment fails to charge a violation of the order in this respect. This contention does not seem to be seriously controverted by the district attorney, and I think it is sound.

The language of the second paragraph of the order, that, " It is unlawful for any person to hunt, trap, capture, willfully disturb, or kill any bird of any kind whatever," is to be construed with reference to the first and dominating paragraph which makes the reservation one for "native birds" only. The prohibition is against hunting, etc., any kind of native bird.

## III.

The argument advanced by defendant's counsel on the final point is that the indictment fails to charge an offense in that it does not negative the possible authority of the Secretary of Agriculture for the doing of the acts alleged to have been done by the defendant. It is urged that when a statute, in defining a criminal offense, states an exception, an indictment for such offense must allege enough to show that the accused is not within the exception.

The rule is clearly established in criminal pleading that where an exception is incorporated in or so attached to the definition or description of an offense as to be a part of it, the indictment

must negative it. This was long ago recognized by the Supreme Court in the case of *United States v. Cook,* 17 Wall. 168.

And in a more recent case the same court said, " The general rule is that while the pleader is not bound to negative a proviso, he is bound to aver that the defendant is not within any of the exceptions contained in the enacting clause of the statute." *Ledbetter v. United States,* 170 U. S. 606, 611. See also, *United States v. Wood,* 159 Fed. 187.

The application of the rule is sometimes a matter of difficulty, and has led to inconsistent decisions even in the federal courts. See *United States v. Felderward,* 36 Fed. 490; *United States v. Cook,* 36 Fed. 896; *Shelp v. United States,* 81 Fed. 694.

Whether, upon the trial of a case under this provision of the code, it would be necessary to prove the negative averment is another matter. It has been held in analogous cases that the burden is upon the defendant to show his authority. But that does not change the rule of pleading.

In the case at bar the exception is contained in the enacting clause, and it enters into the description of the offense. The indictment, failing to negative it, is, therefore, faulty.

For the reasons stated the demurrer must be sustained.